THE PEOPLE OF THE STATE OF NEW YORK ex rel. ALPHA PORTLAND CEMENT COMPANY, Relator, *v.* WALTER H. KNAPP and Others, as and Constituting the Tax Commission of the State of New York, Respondents.

Third Department, March 11, 1920.

Tax — franchise tax on manufacturing and mercantile corporations — stocks and bonds owned and held by foreign corporation outside of State — constitutional law.

A New Jersey corporation doing business in this State may not be assessed under article 9-a of the Tax Law on the value of bonds and stocks of other foreign corporations which have no relation to the business carried on within this State, and which are owned and held by it within another State.

*It seems*, that a contrary construction of the Tax Law would operate to invalidate it.

JOHN M. KELLOGG, P. J., and H. T. KELLOGG, J., dissent.

CERTIORARI issued out of the Supreme Court and attested on the 26th day of July, 1919, directed to Walter H. Knapp and others, as and constituting the State Tax Commission of the State of New York, commanding them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had in assessing taxes against the relator

Alpha Portland Cement Company for the year beginning November 1, 1918, under article 9-a of the Tax Law.

*Louis H. Porter* and *F. C. Taylor*, for the relator.

*Charles D. Newton, Attorney-General [C. T. Dawes, Deputy Attorney-General,* of counsel], for the respondents.

WOODWARD, J.:

The Alpha Portland Cement Company was organized under the laws of the State of New Jersey on the 21st day of January, 1910, and began business in New York on the 6th of February, 1912. It has an issued capital stock of $10,000,000, and showed a net income of $559,313.30 in its report to the United States government for the year ending December 31, 1917. The company is engaged in the manufacture and sale of cement at points within the States of New York, Pennsylvania, New Jersey, Virginia, West Virginia, North Carolina, South Carolina, Georgia, Florida, Maine, Massachusetts and Maryland. The relator has been assessed a tax amounting to the sum of $3,980.31 under the provisions of article 9-a of the Tax Law, and brings this proceeding to review such action on the part of the Tax Commission of the State of New York. The controversy arises over the inclusion in this assessment of certain bonds held by the corporation outside of the State of New York, as well as the value of the stocks of other corporations in other States held by the corporation, and which are not within the jurisdiction of the State of New York.

Section 214 of the Tax Law (added by Laws of 1917, chap. 726, as amd. by Laws of 1918, chaps. 276, 417) provides, as it relates to the facts in this case, that " The proportion of the net income of the corporation upon which the tax under this article shall be based, shall be such portion of the entire net income as the aggregate of

" 1. The average monthly value of the real property and tangible personal property within the State.

" * * *

" 3. The proportion of the average value of the stocks of other corporations owned by the corporation, allocated to the State as provided by this section, but not exceeding ten per centum of the real and tangible personal property segregated to this State under this article, bears to the aggregate of

264   People ex rel. Alpha Portland Cement Co. *v.* Knapp.

Third Department, March, 1920.        [Vol. 191.

, " 4. The average monthly value of all the real property and personal property of the corporation, wherever located.

" 5. The average total value of bills and accounts receivable for (a) personal property sold by the corporation from merchandise manufactured by it within and without this State; (b) personal property sold by the corporation from merchandise owned by it at the time of acceptance of the order but not manufactured by it; and (c) services performed both within and without this State, based on orders received at offices maintained by the corporation, excluding bills and accounts receivable on orders filled from a stock of merchandise or other · property maintained by the corporation.

" 6. The average total value of stocks of other corporations owned by the corporation, but not exceeding ten per centum of the aggregate real and tangible personal property set up in this report."

The relator is a New Jersey corporation, with its principal place of business apparently at Easton, Penn., and there are no elements of bills and accounts receivable involved here, except as they may be embraced in the complex system of calculations, suggesting the necessity of an actuarial adjunct of the courts in disposing of cases of this character.

The relator, as it appears from the record, has a substantial part of its manufacturing plant in Pennsylvania. Under the laws of that State foreign corporations are not permitted to own real estate. To meet this situation a Pennsylvania corporation was organized to take title to the necessary real estate, and the stock of this Pennsylvania corporation, aggregating $4,500,000, is all owned by the relator. That is, a New Jersey corporation, having its general offices at Easton, Penn., is the owner of the entire capital stock of the Pennsylvania corporation, so that under the rule recognized in this State, for purposes of taxation, that the capital of a corporation invested in the stock of another corporation shall be deemed to be assets located where the physical property represented by such stock is located (Tax Law, §§ 181, 182, as respectively amd. by Laws of 1917, chap. 490, and Laws of 1916, chap. 333), the New Jersey corporation is in the position of being the owner of the plant in Pennsylvania practically as though the title to the property was vested directly in the relator. The

relator does not have these stocks within the State of New York; the physical assets are not within this State. They do not appear to have any relation whatever to the business transacted in this State, any more than would be the case if the New Jersey corporation was the direct owner of the plant in Pennsylvania where it is, in fact, engaged in manufacturing cement. Reading the Tax Law as a whole, and considering its purpose to place domestic and foreign corporations upon a basis of equality, and recognizing that for purposes of taxation the capital of a corporation invested in the stock of another corporation shall be deemed assets located where the physical property represented by such stock is located (Tax Law, §§ 181, 182) it seems clear to us that it was never intended that the statute should be given such a construction as to impose a tax upon property wholly without the territorial jurisdiction of the State, and we are of the opinion that a contrary construction would operate to invalidate the statute. It is true, of course, that values within the State may be influenced by the value of the entire property as a going concern, and to this extent the Legislature may extend its legislative influence beyond the confines of the State without doing violence to constitutional principles, but to hold that the State of New York may go over into the Commonwealth of Pennsylvania and impose a burden upon a corporation of the State of New Jersey, lawfully carrying on business there, is to go beyond the powers of any State. In the recent case of *Looney* v. *Crane Co.* (245 U. S. 178, 188) the court held squarely that the States, by reason of their power to exclude foreign corporations, could not, as a condition of permitting them to do business within a State, exert the power to tax the property of the corporation and its activities outside of and beyond the jurisdiction of the State in disregard, not only of the commerce clause of the United States Constitution (Art. 1, § 8, subd. 3), but of the due process clause of section 1 of the Fourteenth Amendment, citing many authorities; and we are clearly of the opinion that the statute, as construed by the Tax Commission, is open to this objection. We are equally persuaded that the concession of a small percentage does not operate to avoid this objection. The effect of the statute, as here construed, is to include in the assessment a very large property located wholly

within the Commonwealth of Pennsylvania and owned by a corporation created by the State of New Jersey and having its principal place of business in the Commonwealth of Pennsylvania. All of this property, and all of the right of levying a franchise or license tax upon the relator in respect to this property, are within the Commonwealth of Pennsylvania, and it would be destructive of that harmony among the States which it was the purpose of the United States Constitution to foster, if the result sought to be accomplished in this assessment could be attained.

The reasoning and the conclusion of the court in *Oklahoma* v. *Wells, Fargo & Co.* (223 U. S. 298, 300, 301), in connection with the case last above cited, seem conclusive upon the question presented here, and we are of the opinion that there can be no lawful authority for taxing the bonds and the stocks owned and held by the relator within the Commonwealth of Pennsylvania. They have no relation to the business carried on within the State of New York by the relator, and we see no escape from the conclusion that the tax is wholly void. The case of *United States Glue Co.* v. *Oak Creek* (247 U. S. 321) involved the sole question whether an income tax of the State of Wisconsin on income derived by the plaintiff from interstate commerce was unconstitutional and void, and the court held that as the tax was upon incomes generally, and not upon the particular source from which it was derived, it was not void. It involved no question such as is here under consideration, and has no bearing as an authority.

The writ should be sustained and the tax set aside as wholly void.                                                           .

All concur, except John M. Kellogg, P. J., and H. T. Kellogg, J., dissenting.

Determination of the State Tax Commission annulled, with fifty dollars costs and disbursements.