## STATE OF TEXAS v. HUMBLE PIPE LINE COMPANY.

No. 3901.  Decided January 31, 1923.

(247 S. W., 1082.)

**1.—Constitutional Law—Tax on Interstate Commerce—Unequal Taxation.**

A tax levied by the State against interstate commerce would be admittedly invalid as violative of article 1, section 8, of the Constitution of the United States. So also, would be a tax on intrastate commerce if it operated unequally upon the same class of subjects, being violative of article 8, section 2, of the Constitution of Texas. (p. 383).

**2.—Statutory Construction—Unconstitutionality.**

Article 7374, Revised Statutes (taxation of pipe line companies). does not require such construction as would make it applicable only to their intrastate business, on the ground that its unconstitutionality as applied to interstate business was well established and recognized at the time of its enactment (1907). The holding of the Supreme Court of Texas at that time was other-

wise (State v. Galveston, H. & S. A. Ry. Co., 100 Texas, 153). Article 7374 was apparently modeled on the Act there sustained; and such ruling had not then been reversed on appeal (Galveston, H. & S. A. Ry. Co. v. State, 210 U. S., 217).    (pp. 383, 384).

### 3.—Taxation—Occupation Tax Based on Gross Receipts.

Article 7374 imposes on pipe line companies an occupation tax based. on the amount of their gross receipts "from all sources whatsoever," ascertained solely from their sworn reports of such receipts, whether interstate or intrastate, and proportioned to the length of their lines within the State as compared with that outside. .It makes no distinction between interstate and intrastate earnings, but assesses the tax upon both.    (pp. 384, 385).

### 4.—Taxation—Means of Ascertaining.

A workable means of ascertaining the amount of taxes to be paid is indispensable; and article 7374, Revised Statutes, gives no method of ascertaining that against pipe lines other than one based on gross receipts from all sources, and providing no way of separating them.    (p. 385).

### 5.—Same—Equality of Taxation.

The division of taxes based on proportionate mileage within and out of the State is only an arbitrary one, having no relation to the respective amounts carried, and providing no means for ascertaining receipts from interstate and intrastate business respectively, within the State or without. As applied to lines partly within and partly without it is unequal and discriminating between subjects of the same class.  See examples of such effect of its application.  (pp. 385, 386).

### 6.—Taxation—Ascertainment by Comptroller.

The provision in article 7374 for ascertainment of a fairer apportionment of the tax by the Comptroller, is subject to the same objection as that to which it is an alternative, being based on total gross receipts.  Whether the power attempted to be conferred on him is an unlawful delegation of legislative authority, is not determined, answer thereto being held unnecessary in view of this holding, and no action by him being here involved.  (p. 386).

### 7.—Constitutional Law—Statute Invalid in Part.

The legislative intention, in enacting article 7374, Revised Statutes, to levy the tax upon both interstate and intrastate business runs so clearly through all its provisions, and its parts are so connected, interdependent and inseparable, that it cannot be held that the Legislature would have passed it applied to intrastate business alone, and the article as a whole must be held invalid.  (p 386).

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Travis County.

*W. A. Keeling,* Attorney-General, and *Bruce Bryant* and *Frank M. Kemp,* Assistants, for appellant.

The tax involved in this suit is a tax upon the occupation of the appellee, calculated on the gross receipts derived by it for a term previous to the beginning of the term  for which the tax is to be paid, and is not a tax on its gross receipts, but an effort to reach the additional value of appellee as a going concern.  Maine v. Grand Trunk Ry. Co., 142 U. S., 217; New York, L. E. & W. Ry. Co. v.

Pennsylvania, 158 U. S., 431; Henderson Bridge Co. v. Kentucky, 166 U. S., 150.

The tax as levied by Article 7374, Revised Statutes of the State of Texas, is not unconstitutional as being in conflict with the commerce clause of the Constitution of the United States, because the effect of such tax upon interstate commerce, if any, is indirect, remote and incidental to the requirement that appellee pay its proportional part towards the support of government, and said statute does not thereby violate Section 8 of Article 1 of the Constitution of the United States, known as the "commerce clause" thereof. Same authorities.

A single tax, levied under the laws of a State upon receipts of a company which were partly derived from interstate commerce, and partly from commerce within the State, and which were capable of separation, but were returned and assessed in gross and without separation, or apportionment, is invalid in proportion to the extent that such receipts were derived from interstate commerce, but is otherwise valid. Revised Statutes, art. 7374; Telegraph Co. v. Texas, 105 U. S., 465; Philadelphia Etc. Steamship Co. v. Pennsylvania, 122 U. S., 326; Ratterman v. Western U. Tel. Co., 127 U. S., 411; Cooley, Const. Lim., pp. 246, 247, 248; Bowman v. Continental Oil Co., 256 U. S., 642; Cleveland Refining Co. v. Phipps, 227 Fed., 463; Texas Co. v. Brown, 226 Fed., 577; Telegraph Co. v. Texas, 62 Texas, 630; Acts, 1905, ch. 141; G. H. & S. A. Ry. Co. v. Davidson, 93 S. W., 436; Adams Fish Market v. Sterrett, 172 S. W., 1109.

Article 7374 is susceptible of the construction, that the taxes levied against interstate commerce, if any, could be separated from that levied in intrastate commerce; and that if that part levied in interstate commerce should be condemned as invalid, the part of the statute applicable to intrastate commerce would remain as a valid tax. same authorities.

Article 7374, under proper construction, does not discriminate against the appellee, and given its proper meaning, provides that each of the pipe line companies doing business in Texas shall pay an occupation tax, measured by 2 per cent of its gross receipts, derived wholly from intrastate commerce, and such tax, when so levied, within the true meaning of said statute, would be equal and uniform as to all pipe line companies and would not be in violation of Section 2 of Article 8 of the Constitution of the State of Texas. State v. G. H. & S. A. Ry. Co., 100 Texas, 173; G., H. & S. A. Ry. Co., v. State, 93 S. W., 460; State v. M., K. & T. Ry. Co., 100 S. W., 147.

Article 7374 could and should be construed so as to separate the provisions of same, taxing interstate commerce, if it does, from that part taxing intrastate commerce, and the invalidity of the part taxing interstate commerce, would not render invalid the part thereof taxing intrastate commerce, and said article properly construed would

not be discriminatory against the appellee, but would be equal and uniform as to all persons of the same class. Same authorities.

That clause in Article 7374 purporting to authorize the Comptroller of Public Accounts to adopt some formula, arriving at the amount of the tax, other than the one prescribed in said statute, is not such a delegation of legislative authority as would be in violation of Section 3 of Article 8 of the Constitution of Texas. Cooley on Taxation, p. 100.

*John C. Townes, Jr.*, for appellee.

Article 7374 of the Revised Civil Statutes of Texas, under the facts of this case, imposes a burden upon interstate commerce, and is therefore in violation of Subdivision 3, of Section 8, of Article 1, of the Constitution of the United States, since said statute exacts from the Humble Pipe Line Company a quarterly tax on its gross receipts, which arise from both interstate and intrastate business. G., H. & S. A. Railway Co. v. Texas, 210 U. S., 217; Houston Belt & Terminal Co. v. Texas, 108 Texas, 314; Oklahoma v. Wells Fargo & Co., 223 U. S., 298; United States v. Union Stockyards Etc. Co., 226 U. S., 296; Southern Pacific Etc. Co. v. I. C. C., 219 U. S., 498; Railroad Commission v. Worthington, 225 U. S., 101; T. & N. O. R'y. Co. v. Sabine Tram. Co., 227 U. S., 111; Pedersen v. D. L. & W. Railway Co., 229 U. S., 146; Express Co. Minnesota, 223 U. S., 335.

The provisions of said Article 7374 are so interwoven as to be incapable of distinct separation, and are of such a character that it cannot be said that the legislature intended that a tax should be levied on intrastate business, if it had known the attempt to tax interstate business was invalid, and the entire article is therefore void. Western Union Telegraph Co. v. Texas, 62 Texas, 630; Comanche Light & Power Co. v. Nix, 156 Pac., 293; Oklahoma v. Wells-Fargo Co., 223 U. S., 298; Lewis' Sutherland, Statutory Construction, Par., 297; Pioneer Telephone & Telegraph Co. v. Oklahoma, 138 Pac., 1033; Johnson v. State, 35 Atl. 787, affirmed, 37 Atlantic, 949; Connolly v. Union Sewer Pipe Co., 184 U. S., 549; Warren v. Charlestown, 2 Gray (Mass.), 84; Poindexter v. Greenhow, 114 U. S., 270; Spraigue v. Thompson, 118 U. S., 90; Cooley's Constitutional Limitations, pp., 246-250; Baldwin v. Franks, 120 U. S., 678; G. H. & S. A. Railway Co. v. Davidson, 93 S. W., 455; Skagit County v. Stiles, 10 Wash., 388; State v. Poynter, 59 Neb., 417.

Even if the court should hold that said Article 7374 is separable, and can be construed as levying a tax on intrastate business alone, independent of the tax on gross receipts derived from interstate commerce, said Article 7374 so construed is still invalid, as it violates Section 2, of Article 8 of the Constitution of the State of Texas, since the tax levied on gross receipts from intrastate business under

the facts set out in the certificate of the Court of Civil Appeals is discriminatory, and is not equal and uniform on the same class of subjects within the limits of the authority levying the tax. Constitution of Texas, Section 2 of Article 8; Pullman Palace Car Co. v. State, 64 Texas, 274; Hoefling & Son v. City of San Antonio, 85 Texas, 228; Poteet v. State, 41 Texas Crim., 268, 53 S. W., 869.

That portion of Article 7374 which undertakes to authorize the Comptroller of Public Accounts to collect gross receipts taxes upon some basis other than the one prescribed in the act is void and ineffectual, because it is an attempt on the part of the legislature to delegate to the Comptroller of Public Accounts the power to determine and fix tax rates applicable to pipe line companies, a power lodged by Section 3, of Article 8 of the Constitution of Texas in the legislature alone. Constitution of Texas, Section 3 of Article 8; James v. United States Fid. & Guar. Co., 117 S. W., 406; State v. State Board of Examiners, 104 Pac., 1055; Cooley on Taxation, 3rd Edition, Vol. 1, p. 1004.

Said Article 7374 is invalid so far as the Humble Pipe Line Company is concerned because it is so unequal and discriminatory that it denies said pipe line company the equal protection of the law, and is therefore in violation of Section 1, Article 14 of the Constitution of the United States. Constitution of the United States, Sec. 1, Art. 14; United States v. Cruikshank, 92 U. S., 542; G., C. & S. F. R'y. v. Ellis, 165 U. S., 152; Kentucky Railroad Tax Cases, 115 U. S., 321; Union Tank Line Co. v. Wright, 249 U. S., 275; State v. Julow, 129 Mo., 163, 31 S. W., 781; Barbier v. Connolly, 113 U. S., 27; Yick Wo v. Hopkins, 118 U. S., 356; Cotting v. Kansas City Stockyards Co., 183 U. S., 79.

*Robert A. John, Hiram M. Garwood, T. J. Lawhon,* and *E. F. Smith, (Baker, Botts, Parker & Garwood,* of counsel) as amici curiae, by permission filed written argument and citation of authorities in support of the positions of appellee.

MR. JUSTICE PIERSON delivered the opinion of the court.

Questions certified from the Court of Civil Appeals for the Third Supreme Judicial District of Texas, in an appeal from Travis County.

The certificate of the Court of Civil Appeals gives a comprehensive statement of the case, as follows:

"Owing to the importance of the case, the nature and character of the questions involved necessary to be determined in order to arrive at the proper decision in said appeal, we deem it advisable to certify the following material questions to this Honorable Court for decision.

### Statement of Facts.

"This is a proceeding brought by the State of Texas against the Humble Pipe Line. Company for the purpose of collecting an occupation tax on appellee's gross receipts derived from its earnings in transporting petroleum oil through its said pipe line, under and by reason of Article 7374, Revised Civil Statutes of Texas. The District Court of Travis County made the following findings of fact which were not excepted to by the State of Texas, and said statement of facts are accepted as true by this court:

### Findings of Fact.

"1.   The defendant, Humble Pipe Line Company, owns, manages. and operates a pipe line or pipe lines which lie wholly within this State and is engaged in the business of transporting petroleum oil.

"2.   The oil transported by the said defendant is in part intrastate commerce and in part interstate commerce as follows, to-wit: intrastate commerce $569,586.96, interstate commerce $1,497,314.75, for the period beginning July 1, 1922, and ending September 30, 1922.

"3.   The defendant has competitors engaged in the same class of business as it is engaged in but whose pipe line or pipe lines lie partly within and partly without this State as follows, to-wit: the Texas Pipe Line Company has 2,777.58 miles of connecting pipe lines and that of said connecting pipe lines 89% lies within this State and 11% lies without this State; that the Sinclair Pipe Line Company has approximately 1,090 miles of connecting pipe lines and that of said connecting pipe lines less than 24% lies within this State and more than 76% lies without this State; that both of said companies do some intrastate business and some interstate business.

"4.   That the defendant, the said Humble Pipe Line Company, if Article 7374 of the Revised Civil Statutes of Texas is a valid enactment, is indebted to the State of Texas in the sum of $41,338.03, together with a penalty of 10% on said amount for taxes on its gross receipts derived from its earnings as a pipe line company 'from every source whatsoever' for the three months beginning July 1, 1922, and ending September 30, 1922, and if said Article 7374, supra, is invalid in so far as it attempts to levy a tax on both intrastate and interstate commerce but is susceptible of the construction that the Legislature only intended to levy a tax on intrastate commerce alone, then the amount due by the defendant, the said Humble Pipe Line Company, is $11,391.73, together with the penalty of 10% on said amount.

"5.   That the defendant, the Humble Pipe Line Company, owns real and personal property situated in the State of Texas and it has paid all ad valorem taxes levied by the State of Texas, or any political subdivision of the State of Texas, on said property, and in

addition has paid all franchise taxes levied by the laws of the said State of Texas, and is not now in default in the payment of any of said taxes required of it, and that the tax prescribed by said Article 7374 is not in lieu of, but is in addition to all other taxes required of the defendant to be paid to the State of Texas.

"After making the foregoing findings of fact, the District Court found, as a matter of law, that Article 7374 of Revised Civil Statutes of Texas, was unconstitutional in that it was in violation of Section 1 of Article 8 of the Constitution of the United States and of Sections 2 and 3 of Article 8 of the Constitution of the State of Texas, and entered its judgment that the State of Texas take nothing by reason of its said suit, to which said judgment of the District Court, the State of Texas duly excepted, and on December 5, 1922, gave notice of appeal to the Honorable Court of Civil Appeals for the 3rd Supreme Judicial District of Texas.

"The appeal is predicated upon propositions all of which involve, directly, the construction and the validity of the provisions of said Article 7374, Revised Civil Statutes of Texas, all of said questions being material to the disposition of this appeal. That the issues in this case involve the revenues of the State of Texas and are of paramount importance to the public interests.

"Hence the following questions are respectfully submitted and certified to this Honorable Court for examination and answer to the end that this litigation may be properly and speedily terminated.

### Questions Certified.

"1. Is Article 7374, Revised Civil Statutes of the State of Texas, under the facts above set forth, in so far as it attempts to levy a tax on the gross receipts, from every source whatsoever, of the Humble Pipe Line Company, in violation of that clause of Section 8 of Article 1 of the Constitution of the United States known as the "commerce clause" thereof?

"2. If it is held that Article 7374 levies a tax on interstate commerce, then and in that event does said statute, so construed remain a valid enactment and levy a tax on intrastate commerce under the facts set out?

"3. In the event question No. 2, is answered in the affirmative, then and in that event does said Article 7374 levy an occupation tax that is equal and uniform and nondiscriminatory within the meaning of Section 2 of Article 8 of the Constitution of Texas, under the facts above set forth?

"4. Is that clause in said statute which purports to authorize the Comptroller of Public Accounts to adopt some formula arriving at the amount of the tax other than the one prescribed in said statute, a delegation of legislative authority in violation of Section 3 of Article 8 of the Constitution of Texas?"

The construction and the validity of Article 7374 (Vernon's Complete Texas Statutes) being involved, we quote that Article, as follows:

"Each and every individual, company, corporation or association whether incorporated under the laws of this state, or of any other state or territory, or of the United States, or of any foreign nation, which owns, manages, operates, leases or rents any pipe line or pipe lines within this state, whether such pipe line or pipe lines be used for transmission of oil, natural or artificial gas, whether such oil or gas be for illuminating or fuel purposes, or for steam, for heat or power, or for any other purpose, and whether such pipe line or pipe lines be used for the transmission of articles by pneumatic or other power, shall, on or before the first days of January, April, July and October of each year, pay to the state of Texas an occupation tax equal to two per cent of its gross receipts, if such pipe line or pipe lines lie wholly within this state; and, if such pipe line or pipe lines lie partly within and partly without the state, such individuals, companies, corporations and associations shall pay a tax equal to two per cent of such proportion of its gross receipts, as the length of such line or lines within the state bears to the whole length of such line or lines; provided, that if satisfactory evidence is submitted to the comptroller of public accounts at any time prior to the date fixed by this article for the payment of the tax herein imposed, that any other proportion more fairly represents the proportion which the gross receipts of any pipe line or pipe lines for any quarter within this state bears to its total gross receipts, it shall be his duty to collect for such quarter from every such pipe line or pipe lines a tax equal to such other proportion of two per cent of its total gross receipts. For the purpose of determining the amount of such tax, the individual or the president, treasurer or superintendent of such company, association or corporation, shall quarterly, on the dates aforesaid, make a report to the comptroller of public accounts, under oath of the individual or of the president, treasurer or superintendent of such company, corporation or association, showing the gross receipts of such pipe line or pipe lines from every source whatsoever for the quarter next preceding, and shall immediately pay to the state treasurer an occupation tax for the quarter beginning on said date, calculated on the gross receipts so reported."

It is with great reluctance that a court will hold a statute invalid. As said by this Court in the case of Smith v. Patterson, 111 Texas, 535; 242 S. W., 749:

"It has been repeatedly held by this Court and the courts of all jurisdictions that a legislative enactment will not be held unconstitutional and invalid unless it is absolutely necessary to so hold." Solon v. State, 54 Texas Cr., 261, 114 S. W., 350; Koy v. Schneider, 110 Texas, 369.

An analysis of this Article discloses, however, that it is subject to the objections raised against it. It is so clearly violative of the Constitution of the State of Texas and of the Constitution of the United States that only a careful analysis of it and an application of its practical effect is necessary to show its invalidity.

The questions of law involved are now fairly well settled. Therefore, it is not deemed necessary to enlarge upon them further than in their application to the case at bar.

It is admitted by the State that a tax levied by the State against interstate commerce would be invalid as violative of Section 8, Article 1, of the Constitution of the United States, wherein it provides that Congress shall have power to ''regulate commerce with foreign Nations and among the several States and with Indian Tribes.'' Galveston, H. & S. A. Railway Co. v. Texas, 210 U. S., 217, 5 L. Ed., 1031; Houston Belt & Terminal Co. v. Texas, 108 Texas, 314, 192 S. W., 1054; Meyer v. Wells Fargo & Co., 223 U. S., 298, 56 L. Ed., 445; United States v. Union Stockyards, etc. Co., 226 U. S., 296, 57 L. Ed., 226; Southern Pacific, etc. Co. v. I. C. C., 219 U. S., 498, 55 L. Ed., 310; Railroad Commission of Ohio v. Worthington, 225 U. S., 101, 56 L. Ed., 1004; United States Express Co. v. Minnesota, 223 U. S., 335, 56 L. Ed., 459. It is also admitted that if it operates unequally upon the same class of subjects as applied to intrastate business, it would be invalid as violative of Section 2, Article 8, of the State Constitution, which provides: ''All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax.''

The State presents that at the time the Act was passed the law was well settled that a State could not tax intersate business, and, therefore, it was the legislative intent to levy a tax only upon intrastate business; that the Article can be, and should be, so construed as to separate the provisions of same, separating the part taxing interestate commerce from that taxing intrastate commerce, and as applied to instrastate commerce is not discriminatory against appellee, but would be equal and uniform as to all persons of the same class.

Appellee asserts that the Article is inseparable; that when it is held invalid as to interstate earnings, there is nothing left; and that it is so clearly discriminatory in its method of application, if applied only to intrastate earnings, that it is obnoxious to our State Constitution, Section 2, Article 8.

While the law is now settled that the State can not include interstate business in its tax levy, it was not so at the time of the enactment of Article 7374 in 1907. At least the Legislature had good reasons to believe it had such authority and was enacting a valid law.

On November 7, 1906, the Supreme Court of Texas rendered its opinion in the case of State v. Galveston, H. & S. A. Ry. Co., 100 Texas, 153 (being the same case Galveston, H. & S. A. Ry. Co. v. Texas, 210 U. S., 217, supra), sustaining the Act of 1905, which levied a gross receipts tax upon railway companies. That Act provided that each railroad company should pay a tax equal to one per cent. upon its gross receipts, if its line lies wholly within the State; if partly within and partly without the State, then a tax equal to such proportion of one per cent. as the length of its line in Texas bore to its whole length. The provision for reports in that Act were very similar to the one before us. The similarity of the two acts is such that it is a reasonable inference that the Act before us was modeled from the other. The court in that case held the tax to be an excise tax and valid, though the method provided for assessing and ascertaining the amount to be paid was based upon receipts from both interstate and intrastate business. This decision was before the Legislature at the time of the enactment of Article 7374 two or three months after its rendition.

Afterwards, in 1908, the Supreme Court of the United States re-reversed the judgment of this Court; however by a divided court of five to four. Galveston, H. & S. A. Ry. Co. v. State, 210 U. S., 217, 52 L. Ed., 1031. But the majority opinion has been maintained, and is *now* the settled law. See Houston Belt & Terminal Co. v. State of Texas, supra, and other cases cited.

Article 7374 provides that each pipe line company whose lines lie wholly within this State shall pay an occupation tax of two per cent. of its *gross receipts,* and the concluding sentence of the Article requires report showing gross receipts from every source whatsoever— this without distinction as to the nature of business, whether interstate or intrastate. It provides that if a pipe line company's lines lie partly within and partly without the State, it shall pay a tax equal to two per cent. of such proportion of its *gross receipts* as the length of its line within the State bears to the whole length of its line—this, too, without distinction as to the nature of business, whether interstate or intrastate, and also without regard to whether *such proportion* will work equally and uniformly upon the amount of tax required to be paid by persons or companies of the same class on either interstate or intrastate business.

It is readily seen that the law and its plan or method of assessing and ascertaining how much tax a company is required to pay makes no distinction as between interstate and intrastate earnings, but assesses the tax against both.

The language of the Article discloses that it was the purpose of the Act to impose, against persons and corporations who operate pipe lines in Texas, an occupation tax equal to two per cent. of their

gross receipts "from all sources whatsoever", and to provide a means for ascertaining the amount of such tax in any given case. If the line lay wholly within the State, the tax was simply "a tax equal to two per cent. of its gross receipts." If the line lay partly within and partly without the State, the tax was simply "a tax equal to two per cent. of such proportion of its gross receipts", etc. In providing the means for ascertaining the business done upon which tax was to be figured, it provided for a report to the Comptroller of Public Accounts, "under oath . . . showing the *gross receipts* . . . from every source whatsoever," and provided for immediate payment to the State treasurer, "calculated on the gross receipts so reported". No other means or method of determining the amount of tax is provided than that based upon the gross receipts from all sources.

A workable means of ascertaining the amount of taxes to be paid is indispensable. Otherwise uncertainty would prevail and an action at law become necessary for the ascertainment thereof in each instance. Western Union Tel. Co. v. State of Texas, 62 Texas 630. In the case last cited Judge Stayton said:

"It is of the utmost importance, for the protection of the tax-payer, that tax laws should be certain, both as to the thing taxed and as to the amount of the tax, and the manner for its ascertainment; that the tax-payer may have an opportunity, without the expense of litigation, to pay such taxes as he may owe; and a tax law which does not accomplish this purpose ought to be held invalid, whether this results from an attempted exercise of power not possessed, through which the law becomes uncertain by both proper and improper subjects being combined and selected for taxation, or by the failure of the legislature for, any other reason to furnish the rules by which taxes may be levied, assessed and collected."

Thus we find the Article levied a tax against interstate business as well as intrastate business, and provided no way to separate them.

If it be assumed that the Legislature intended the Article to apply only to intrastate commerce and to name companies whose lines lie wholly within the State as a class of subjects, then there was no means provided for ascertaining the amount of the intrastate business, the tax assessed being two per cent. of gross receipts from all sources, and the Act would fall because incapable of separation as between interstate and intrastate earnings.

If it was intended to apply the two per cent. gross receipts tax against intrastate business and to designate companies whose lines lie partly within and partly without the State as a class of subjects, and to provide for the ascertaining of the amount of the tax upon intrastate earnings by providing the amount to be such proportion of two per cent. upon gross receipts as the length of line in Texas bears to the whole line, then the Act would fall because the method

provided would be unequal and discriminatory among the same class of subjects. This is easily illustrated from the facts found by the trial court.

Upon $100,000.00 of business the two per cent. tax would produce $2,000.00.

The Texas Pipe Line Company's line lies 89% within Texas and 11% without.

Under the proportion provided, upon $100,000.00 of intrastate business the 2% tax under the terms of the Act would be 89% of $2,000.00, or $1780.00, to be paid by said company.

The Sinclair Pipe Line Company's line lies 260 miles within this State and 830 miles without the State, or nearly 24% within the State and about 76% without the State. Upon $100,000.00 of intrastate business the 2% tax would be 24% of $2,000.00, or $480.00.

A division based upon a proportionate mileage is only an arbitrary one, and has no relation to the actual amount of oil, gas, etc. carried within the State or without the State, or the earnings thereon. No means is provided for ascertaining the gross receipts from intrastate business or interstate business within the State or without.

The difficulty is in no sense obviated by the provision that "if satisfactory evidence is submitted to the Comptroller of Public Accounts at any time prior to the date fixed by this article for the payment of the tax herein imposed, that any other proportion more fairly represents the proportion which the gross receipts of any pipe line or pipe lines for any quarter within this State bears to *its total gross receipts,* it shall be his duty to collect for such quarter . . . a tax equal to such *other proportion* of two per cent. of its total gross receipts." It contains the same vice, and, besides, it contemplates and provides for levying and collecting the tax upon both interstate and intrastate earnings.

We are of the opinion that it was the intention of the Legislature to levy the tax upon both interstate and intrastate business, and this intention so clearly runs through all the provisions of the Article, and its parts are so connected and interdependent and inseparable, that we must hold that the Legislature would not have passed it as applicable to intrastate business alone, and the Article as a whole is invalid. Western U. T. Co. v. State of Texas, 62 Texas, 630.

We answer question No. 1 in the affirmative.

To question No. 2, we answer that the Act levies a tax upon both interstate and intrastate commerce; and inasmuch as it is impossible under the terms of the Act to separate the interstate business from the intrastate business, it is invalid as to both.

Our answer to question No. 2 disposes of question No. 3, and our views expressed in the opinion make it unnecessary to answer question No. 4; besides, the clause of the Article mentioned in that question is not involved here, no action having been taken thereunder by the Comptroller.