

# THE ATTORNEY GENERAL
## OF TEXAS

March 29, 1988

JIM MATTOX
ATTORNEY GENERAL

Honorable H. Tati Santiesteban
Chairman
Committee on Natural Resources
Texas State Senate
P. O. Box 12068
Austin, Texas    78711

Opinion No.   JM-877

Re: Procedure for appoint-
ment of members of the
Texas Water Commission
(RQ-1221)

Dear Senator Santiesteban:

You ask whether each of the three members of the Texas Water Commission must represent a different geographic area of the state. A now-repealed statute divided the state into three Texas Water Divisions which corresponded approximately to the east, south, and west of the state. Acts 1913, 33d Leg.; Tex. Gen. Laws, ch. 171, §6; see Acts 1967, 60th Leg., ch. 360, §2 (repealer). The former law stated as follows:

> The members of said Commission shall be appointed by the Governor. . . . Each shall be a citizen of this State and a bona fide resident of the water division from which he is appointed.

Acts 1962, 57th Leg., 3d C.S., ch. 4, at 10; see also Acts 1913, 33d Leg., Tex. Gen. Laws, ch. 171, §7, at 359.

In 1965, the legislature enacted Senate Bill No. 145 which deleted the language requiring the appointment of one commissioner from each of the water divisions and adopted the following language:

> Members of the Commission shall serve on a full-time basis and <u>each member shall be from a different section of the state</u>. (Emphasis added.)

Acts 1965, 59th Leg., ch. 296, §3, at 583-84. This language is now codified in section 5.052 of the Water Code:

> (a)   The commission is composed of  three
> members who  are appointed  by the  governor
> with the advice and consent of the senate.
>
> (b)   The governor shall make the appoint-
> ments in such a  manner that each member  is
> from a different section of the state.

Water Code §5.052.

You ask  whether  present  law  requires  each  Water
Commissioner to be appointed  from one of the  three water
divisions or  otherwise  requires  commission  members  to
represent diverse  geographic  areas  of  the  state.   To
answer your question,  we must  determine the  legislative
intent expressed in  the language  of section 5.052(b)  of
the Water Code, which was enacted in 1965.

A brief  submitted  by  the  Texas  Water  Commission
refers to  a  study of  the  state's water  administration
system  prepared  for  the  Water  Commission,  the  Water
Development Board, and  the Water Pollution  Control Board
just prior to the  1965 legislative session.   The report,
prepared by  the  Texas  Research League,  criticized  the
tendency of some state commissions

> to function  along  regional  lines  and  to
> program capital contributions in rotation by
> member areas.

Texas Research League,  A Report to  the Texas Water  Com-
mission and the Texas Water Development Board:  The Struc-
ture and Authority for State Leadership  of Water Develop-
ment in Texas,  23  (1965).  The  report  suggested  that
regional representation be  left to the  legislature where
major state investments  were involved.  Id.   The portion
of the report on commission organization recommended "that
the geographical districts  be eliminated  as a basis  for
appointment to the Texas Water Rights  Commission."  Texas
Research League, A  Report to  the Texas Water  Commission
and the Water Development  Board:  Water Rights  and Water
Resource Administration, 31 (1965).  It stated as follows:

> [P]resent members are selected on the  basis
> of  geographical  districts  delineated   in
> 1917, and  those  districts  are  now  badly
> out of  balance  in  terms  of  proportional
> representation.  The  East  Texas  district,
> containing the cities of Dallas, Fort  Worth
> and  Houston and  many  other  metropolitan
> centers, includes  more than  two-thirds  of

the State's total population. In its role
as an administrator of water rights, the
Texas Water Rights Commission would not be
concerned with the promotion of water
development which might favor one region as
opposed to another.

Recommendations from this report were incorporated in
legislation introduced during the 1965 legislative
session. S.B. No. 145, S.B. No. 146, Acts 1965, 59th
Leg., chs. 296, 297.

Senate Bill No. 145, as introduced, eliminated all
geographical qualifications for the commission. Bill
File on Senate Bill No. 145, 59th Leg., R.S. (1965) (Texas
State Archives). A committee substitute adopted by the
Senate Committee on Water and Conservation and then by the
Senate as a whole included the language providing that
each member be from a different section of the state. Id.
The House reinstated the requirement that one member be
appointed from each of the water divisions. Id.; H.J. of
Tex., 59th Leg., R.S., 1782 (1965). The Senate refused to
concur in the House amendment and requested the appoint-
ment of a conference committee. S.J. of Tex., 59th Leg.,
R.S., 1231-32 (1965). The conflict between the Senate
provision and the House provision was resolved in favor of
the Senate. The Conference Committee bill included the
present language providing that each member be from a
different section of the state. S.J. of Tex. 59th Leg.,
R.S. 1870 (1965).

This history of Senate Bill No. 145 shows that the
House was reluctant to approve the Senate's changes in
the appointment provision, while the Senate refused to
continue to require each member to reside in a different
water division. The actions of the legislature which
adopted this bill show that there was a significant
difference between the old language on appointment from
water divisions and the new language on appointees being
from different sections of the state. Legislative changes
in the language of statutes generally indicate an
intention to change meaning, and they must be given effect
as such. Independent Life Insurance Co. v. Work, 77 S.W.2d
1036 (Tex. 1934); Robison v. Whaley Farm Corp., 37 S.W.2d
714 (Tex. 1931).

By repealing the old provision requiring residency in
a statutorily-defined district and substituting a pro-
vision that each commissioner be from a different
"section" of the state, the legislature departed from the
former rigid residency requirement. Its use of the

undefined term "section" had the effect of destroying a mandatory residency requirement. "Section," as defined by the dictionary, is

> a distinct part of a territorial or political area. . . .

Webster's Ninth New Collegiate Dictionary.  This is the sense in which "section" is used in Senate Bill No. 145. It is a geographical area, but one so indefinite in location and extent that it cannot be the basis of an enforceable residency requirement or other method of ensuring geographical distribution.  A provision that is essentially indefinite, uncertain, and vague is ineffective and void.  See generally Lone Star Gas Co. v. Kelly, 165 S.W.2d 446, 448 (Tex. 1942); State v. Humble Pipe Line Co., 247 S.W. 1082, 1085 (Tex. 1923).

In our opinion, section 5.052(b) of the Water Code does not establish a valid, enforceable requirement that water commissioners reside in different geographical areas of the state, and it need not be followed.  It can be construed as an expression of the legislature's wish, not its command, that the governor give some consideration to geographical distribution in appointing Water Commissioners.

The legislature which enacted Senate Bill No. 145 adopted a resolution explaining its intent as to the provision in question.  House Concurrent Resolution No. 153 provides in part:

> WHEREAS, Senate Bill 145 requires the Governor to appoint each of the three Commissioners from a different section of the State; now, therefore, be it

> RESOLVED by the House of Representatives, the Senate concurring, That the intent of the Legislature is that the Governor in making future appointments to the Commission shall insofar as possible maintain the Commission with members appointed from the Eastern, Western and Southern areas of the State.  (Emphasis added.)

Acts 1965, 59th Leg., at 2171.

A statute cannot be amended, repealed, or otherwise modified by a resolution.  Terrell Wells Swimming Pool v. Rodriquez, 182 S.W.2d 824 (Tex. Civ. App. - San Antonio

1944, no writ); <u>Humble Oil & Refining Co. v. State</u>, 104 S.W.2d 174 (Tex. Civ. App. - Austin 1936, writ ref'd); <u>Mosheim v. Rollins</u>, 79 S.W.2d 672 (Tex. Civ. App. - San Antonio 1935, writ dism'd w.o.j.); Attorney General Opinion Nos. M-1261 (1972); WW-345 (1958). In saying that the governor shall "insofar as possible" maintain a particular geographical distribution of commission members, House Resolution 153 expresses the legislature's preference, but leaves implementation of this preference to the governor's sole discretion. There is no longer any requirement that each member of the Texas Water Commission represent a different geographical area of the state.

In view of our conclusion that there is no such requirement, we need not answer your questions that depend upon a contrary conclusion.

### S U M M A R Y

Section 5.052 of the Water Code, which provides that the governor shall appoint members of the Water Commission so that "each member is from a different section of the state" does not establish an enforceable requirement and need not be followed.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General